ANSTEAD, Judge,
concurring in part and dissenting in part.
I agree that there is competent substantial evidence in the record to support the trial court’s decision to sever the legal ties of the children with their natural father because of the father’s admitted failure to comply with two (2) successive performance agreements. However, I must reluctantly disagree as to the termination of parental rights of the mother, despite her similar failure to comply with performance agreements. I say reluctantly, because I *1228 am disturbed that the children must remain in foster care in the meantime.
Everyone agrees that the mother is mentally incompetent and was incompetent throughout the legal proceedings resulting in the termination of her rights. The mother was not even present at the final hearing because of her incompetency. The record is unclear as to when she became incompetent although both performance agreements include substantial provisions mandating psychiatric counseling by the mother. It is clear that the mother’s mental problems are responsible in large part for her admitted inability to properly parent her children. Despite this, no hearing was conducted below to determine the competency of the mother, the need for institutionalization or the prospects for recovery. There is some slight evidence on this in the record indicating her prospects for recovery are bleak. I do not think we can approve the termination of parental rights of a parent on the grounds that she failed to comply with a performance agreement when there is a substantial doubt that she had the mental ability to comply.
The statutory scheme for termination of parental rights and the permanent placement of neglected children does not directly address this problem. Section 409.-168(4), Florida Statutes (1985), now mandates that HRS develop a permanent placement plan in cases where a natural parent, because of her mental condition, cannot participate in a performance agreement. However, that statute, itself recently enacted, provides no guidance for a court in a case involving a mentally incompetent parent. The Fifth District has recently invalidated the statutory placement scheme for less egregious reasons concerning the extent of discretion vested in HRS to formulate performance agreements. In the Interest of: R.W. v. Department of Health and Rehabilitative Services, 481 So.2d 548 (Fla. 5th DCA 1986). I suspect that a scheme allowing the termination of parental rights and providing for the permanent placement of neglected children could meet constitutional muster given strong evidence of the mental condition rendering the parent unable to care for the child during its minority and considering the need of a child for a stable environment. However, there is no scheme in place and the focus of the hearing below was the mother’s compliance with a performance agreement that was apparently doomed to failure from the outset because of her mental illness.